MEMORANDUM OF DECISION
CT Page 5130
This case involves a petition for the termination of parental rights of Lisa F. and Felton K. who are the biological parents of Dakota and Acadia.
PROCEDURAL BACKGROUND
On January 18, 1996, the court granted an order of temporary custody regarding Dakota who had been born on January 2, 1996. On January 18, 1996, DCF also filed a neglect petition on behalf of the above-named child. On April 26, 1996, DCF filed an amendment to the neglect petition adding the ground of "uncared for" alleging that his parents could not provide the specialized care which his physical, emotional and mental condition requires. On May 3, 1996, Dakota was adjudicated "uncared for" and was committed to DCF.
On November 3, 1998, DCF filed a neglect petition on behalf of Acadia who had been born on October 28, 1998. An order of temporary custody was also granted on November 3, 1998. On September 2, 1999, Acadia was adjudicated uncared for and committed to the care and custody of DCF.
On June 10, 1999, DCF filed a termination of parental rights petition with regard to Dakota alleging abandonment, failure to rehabilitate and no ongoing parent-child relationship with regard to both parents. On November 2, 1999, DCF filed a termination of parental rights petition with regard to Acadia alleging failure to rehabilitate and no ongoing parent-child relationship with regard to both parents. On the first day of trial, the Assistant Attorney General was asked by the court what grounds she was proceeding upon and she stated that as to both parents, abandonment and failure to rehabilitate with regard to Dakota, and failure to rehabilitate with regard to Acadia. Based on this statement in court, which the court will treat as a motion to amend the petition and will grant, the court is issuing a decision only as to the grounds of abandonment and failure to rehabilitate with regard to Dakota and failure to rehabilitate with regard to Acadia.
On the first day of trial, after the first two witnesses testified, respondents stipulated on the record, after consulting with their counsel, that they would not contest the facts as testified to by the petitioner's witnesses and as set forth in the exhibits which had been agreed upon as full exhibits. Respondents also chose not to testify or call any witnesses on their behalf.
FACTUAL FINDINGS
CT Page 5131
The court makes the following findings by clear and convincing evidence.
On April 22, 1991, Lisa gave birth to a baby while she was sitting on the toilet. The baby was born alive but died as a result of being submerged in the toilet for a significant period of time. The official cause of death was determined to be asphyxia by immersion.
On July 31, 1992, Lisa F. was convicted of second degree manslaughter and was sentenced to ten years, suspended after one year. She served six months in prison and was subsequently released on probation. On December 17, 1995, Lisa was arrested for violation of probation for failure to complete a psychiatric evaluation and treatment, failure to obtain her GED, failure to keep her probation officer informed of her whereabouts, and failure to complete community service. She was reincarcerated on a Do Not Release Status.
On January 3, 1996, DCF received a referral stating that Lisa had given birth to a baby boy on January 2, 1996. At the time, she was incarcerated at York Correctional Facility for violation of probation. DCF subsequently filed a petition of neglect on the grounds that mother was incarcerated, and father, Felton, was residing in Baltimore, Maryland, and was unable to provide for the child.
On April 29, 1996, DCF filed an amendment to the neglect petition to add the grounds that the child had specialized needs and the parents could not provide the specialized care which his physical, emotional and mental condition required. Dakota has been diagnosed with Macrocephaly, suspected increased Intracranial pressure, and poor visual behavior. He has had an abnormal neuralgic examination consistent with Hyper-reflexa and Hypertonia developmental delays, Cafe-au-lait spots and the possibility of optic Glioma or other intercranial mass.
On May 3, 1996, when Dakota was committed to the Department, the court set expectations for Lisa and Felton. They were ordered to keep all appointments set with DCF; keep their whereabouts known to DCF and their attorneys; visit the child as often as DCF permits; and to secure and maintain adequate housing and income. Lisa was ordered to follow recommendations of probation, to have no further involvement with the criminal justice system and to attend and participate in individual and parenting counseling. Both parents were ordered to be involved with and follow Dakota's medical needs and treatment.
On November 20, 1996, while still incarcerated, Lisa was diagnosed with suicidal ideation. She reported seven suicidal attempts with the last CT Page 5132 attempt as recently as November of 1996.
Felton continued to make himself unavailable for Dakota throughout 1996.
On April 24, 1997, the court granted an extension of commitment due to the parents' inability to care for their child and failure to complete court ordered expectations.
On April 16, 1998, the court granted yet another extension of commitment regarding Dakota due to the parents' inability to care for their child.
On October 30, 1998, the Department received a referral stating that Lisa had given birth to a baby girl on October 28, 1998. Because mother and father had not followed through on the steps that had been entered for them, including counseling, a neglect petition was filed on behalf of Acadia. She was ultimately committed to the Department on September 2, 1999. Neither Lisa nor Felton has ever sent either child cards or gifts at their foster home.
On December 8, 1998, Dr. Bruce Freedman conducted a psychological evaluation of Lisa. He found that she had poor judgment and would be dependent on other adults to help her manage parenting and housekeeping and accompanying decision-making.
On January 21, 1999, Southern Connecticut State University, which was overseeing supervised visitation, sent a status report to DCF in which it stated that Lisa did not react age appropriately with regard to Dakota or Acadia. The report stated that she made inappropriate demands on the infant, Acadia, such as not allowing her to sleep. Lisa was also viewed as being disengaged from the child.
Both Lisa and Felton have been whereabouts unknown since September 2, 1999. Neither parent has requested to see Dakota since their last visit with him on June 10, 1999. With regard to Acadia, from the period of September 1, 1999 through March 29, 2000, the parents missed 26 out of 30 possible visits with her. The parents have refused to tell DCF where they are residing. Neither parent has been involved regarding Dakota's medical needs nor have they received any training regarding those needs.
Dakota is now four years old and continues to reside in the foster home where he was originally placed when he was two weeks old. He is currently in a special educational program and was recently referred to the Yale University School of Medicine's Children with Special Needs Program. CT Page 5133
Acadia was placed in the same home as her brother when she was two days old and has resided in this home since leaving the hospital. Acadia was two days old when she was placed. She has adjusted well to her surroundings and has developed a strong bond with her foster parents and with her brother. Acadia has been diagnosed as having a chromosomal inversion and is continuing to be observed to see if she has the same condition as her brother.
Lisa and Felton have been opposed to learning about their children's medical conditions and continue to show no desire to learn to attend to their children's special needs. Neither parent has bothered to even attempt to contact their children's medical providers to learn about their children's medical conditions.
ADJUDICATION
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF has "made reasonable efforts to locate the parent and reunify the child with the parent unless the court finds in the proceeding that the parent is unable or unwilling to benefit from reunification efforts." Conn. Gen. Stat. § 17a-112
(c)(1). The court finds by clear and convincing evidence that DCF made reasonable efforts to reunify Dakota and Arcadia with their parents. DCF offered multiple services to Lisa which were timely and appropriate for her needs. Lisa has not taken advantage of these services with the exception of engaging in some individual counseling and some supervised parenting sessions. DCF offered to help access services for Felton, however, he repeatedly told DCF that he was not in need of any services. The court also finds by clear and convincing evidence that Felton was unwilling to benefit from reunification efforts because he told the worker that he did not need services.
TERMINATION ADJUDICATION
A termination petition that can sever family ties implicates serious constitutional concerns. The United States Supreme Court held inSantosky vs. Kramer, 455 U.S. 745, 753 (1982) that: "the fundamental liberty interests of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents where they have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life." CT Page 5134
However, parents' constitutional rights do not exist in a vacuum without reference to the rights of others in the family. In particular, they do not override a child's right to be safe and to grow and to be nurtured in a supportive environment. As set forth in Conn. Gen.Stat. § 17a-101(a): "the public policy of this state is: to protect children whose health and welfare may be adversely affected through injury and neglect."
STATUTORY GROUNDS
To prevail in a non-consensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See In re Michael B.,49 Conn. App. 510, 512 (1998); Conn. Gen. Stat. § 17a-112 (c)(3). In this adjudicatory phase, the court is limited to events preceding the filing of the petition or the latest amendment. See Practice Book §33-3(a). The relevant date in this case is June 10, 1999 for Dakota and November 2, 1999 for Acadia.
FAILURE TO REHABILITATE
DCF alleges that both parents have failed to rehabilitate. A statutory ground for termination arises when "the parent of a child who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding. . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." Conn. Gen. Stat. § 17a-112 (c)(3)(B). The statute requires the court to analyze the parents' rehabilitative status "as it relates to the needs of the particular child and further, that such rehabilitation must be foreseeable within a reasonable time." In reLuis C., 210 Conn. 157, 167 (1989).
No dispute exists that the court has previously found both of the children to have been "neglected" or "uncared for" thus satisfying a statutory prerequisite. The rest of the statute requires the court to find whether the facts "encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." Conn. Gen.Stat. § 17a-112 (c)(3)(B).
The court finds by clear and convincing evidence that the respondents, Lisa and Felton have failed to rehabilitate within the meaning of the statute. They have failed to take advantage of the services that were offered to them and have not become involved in CT Page 5135 understanding how to take care of their children who both have special needs. They have not kept appointments with DCF, have not visited the children as often as DCF permitted, and have not participated in parenting counseling. Based on the foregoing, the court finds by clear and convincing evidence that the parents have failed to rehabilitate within the meaning of the statute.
ABANDONMENT
DCF also alleges that both parents have abandoned Dakota. Conn. Gen. Stat.
§ 17a-112 (c)(3)(A) provides that a ground for termination exists when "the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." "Attempts to achieve contact with the child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of the child." In reMigdalia, 6 Conn. App. 194, 208-209, cert. denied, 199 Conn. 809
(1986). "Conversely, where a parent fails to visit a child, fails to display any level of affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." Id. at 209.
With regard to Dakota, the court finds by clear and convincing evidence that Lisa and Felton abandoned their child. "There are five general obligations to parenthood: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to provide social and religious guidance." In re Juvenile Appeal (Docket No. 9489), 183 Conn. 11, 14
(1981). These parents have never attempted to become familiar with the special needs of their child in order to learn how to properly take care of him. They have not sent the child cards or gifts. While they have sporadically visited with the child there has been no "continuing reasonable degree of concern." In re Migdalia,6 Conn. App. 194, 210 (1986). The court therefore finds by clear and convincing evidence that Lisa and Felton have abandoned the child within the meaning of the statute.
MANDATORY FINDINGS
With respect to the mandatory factual findings required by Conn.Gen. Stat. § 17a-112 (d), except in the case where termination is based on consent, the court makes the following findings: CT Page 5136
1. The timely nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
With regard to Lisa and Felton, DCF offered timely and appropriate services which the parents have for the most part failed to take advantage of.
2. Whether DCF has made reasonable efforts to reunite the family pursuant to the Federal Adoption Assistance and Child Welfare Act of 1980.
The court finds that DCF made reasonable efforts to reunite Lisa and Felton with their children, but that they were unable or unwilling to benefit from services.
3. The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
Expectations were entered for Lisa and Felton that they have not complied with.
4. The feelings and emotional ties of the children with respect to their parents, any guardian and any person who has exercised physical care, custody or control of the children for at least one year and with whom the children have developed significant emotional ties.
Both the children are bonded with and have significant emotional ties with their foster family.
5. Ages of the children.
Dakota is four years old. Acadia is two years old.
6. The efforts the parent has made to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (a) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to the incidental visitations, communications, contributions, (b) the maintenance of regular contact or communication with the guardian or other custodian of the child.
The parents have only engaged in sporadic visitation. They have not seen CT Page 5137 Dakota since June of 1999. They have not sent cards or letters. They have not kept their whereabouts known to DCF.
7. The extent to which a parent has been prevented from maintaining a relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person, or by economic circumstances of the parent.
Neither parent faced unreasonable interference by anyone.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." Conn. Gen. Stat.
§ 17a-112 (c)(2). The court can consider all events occurring through the close of the dispositional hearing. Practice Book § 33-5.
The court finds by clear and convincing evidence that it is in the children's best interests for a termination of parental rights to enter with respect to the mother, Lisa F., and the father, Felton K.
These parents have not visited with Dakota in almost a year and have only sporadically visited with Acadia since September of 1999. They have never taken an interest in, much less demonstrated an understanding of, their children's special needs. Both of these children have been in foster care their entire life and are in need of permanency.
Accordingly, a termination of parental rights of Lisa F. and Felton K. is ordered. It is further ordered that the Commissioner of DCF be appointed statutory parent for these children for the purpose of securing adoptive homes. The Commissioner shall file with this court no later than 60 days following the date of judgment, a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
CHASE T. ROGERS JUDGE OF THE SUPERIOR COURT